Justice Boyd delivered the opinion of the Court.
Buried in a mound of real-property deeds lies a single contract-interpretation question: What is the function of a clause that "saves and excepts" 1/2 of "all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Grantor ," when the deed does not disclose that the grantor does not own all of the royalty interests and does not except any other royalty interests from the conveyance? The trial court construed the clause to reserve for the grantor 1/2 of all of the "royalties ... which [were then] owned by Grantor," and thus the deeds did not create a so-called Duhig problem, where the grantor owns less than he purports to convey. The court of appeals disagreed and held that the clause reserved for the grantor 1/2 of all royalties produced from the "above described premises which [were then] owned by Grantor," and thus created a Duhig problem.
We agree with the court of appeals that the phrase "which are now owned by Grantor" modifies "the above described premises" and does not put the grantee on notice that the grantor may not then own all of the royalties, and the deeds thus purported to exclude 1/2 of the entire royalty interest and convey the other 1/2. But we also conclude that, instead of reserving a 1/2 royalty interest for the grantors, the clause merely excepted that interest from the grant, so the deeds did not create a Duhig problem. We agree with the court of appeals' ultimate conclusions about the parties' respective ownership of the royalty interests as to the larger tract at issue here, but not as to the smaller tract. However, we base our conclusions on the deeds' language, rather than on the Duhig -estoppel theory. Applying our conclusions to the chain of deeds in this case, we hold that each party with an interest in the tracts owns a 1/4 interest in the royalties produced. We also hold that judicial estoppel does not bar Petitioners from claiming their royalty interests, and that the trial court did not err in denying Petitioners' motion to transfer venue. We modify the court of appeals' judgment in part and affirm the judgment as modified.
I.
Background
This complicated dispute involves a chain of eight separate real-property deeds. The first was executed in 1977, when Ben Perryman conveyed property to his son and daughter-in-law, Gary and Nancy Perryman. The deed (Ben's Deed) conveyed a parcel of land referred to as the "First Tract"[1] to Gary and Nancy, *114 "LESS, SAVE AND EXCEPT an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Grantor." Because Ben owned all of the royalties, minerals, and premises at the time of the conveyance, the parties all agree that, as a result of Ben's Deed, Gary and Nancy owned all of the surface and mineral interests and 1/2 of the royalty interests in the First Tract, and Ben retained the other 1/2 of the royalty interests.
After Ben died in 1980, his 1/2 royalty interest in the First Tract passed through intestacy in equal amounts to Gary and his brother, Wade. Wade's interest later passed upon his death to his daughter, Leasha Perryman Bowden.[2] All parties agree that, as a result of these events, Gary and Nancy owned all of the surface and minerals and 3/4 of the royalties, and Leasha owned the remaining 1/4 of the royalties.
The trouble began in 1983 with the second of the eight deeds, in which Gary and Nancy conveyed the First Tract to GNP Inc., a corporation they created and controlled. This deed (Gary and Nancy's Deed) included a "less, save and except" clause identical to the clause that Ben's Deed contained:
LESS, SAVE AND EXCEPT an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Grantor. It being understood that all of the rest of my ownership in and to the mineral estate in and under the above described lands is being conveyed hereby.
The deed also included a warranty clause in which Gary and Nancy agreed to "Warrant and Forever Defend, all and singular the said premises." The deed did not mention that Leasha already owned 1/4 of the royalty interest or expressly except that interest from the grant.
GNP then executed the third of the eight deeds, a deed of trust in favor of Gainesville National Bank, to secure a promissory note. GNP's Deed of Trust included the same "less, save and except" and warranty clauses as Gary and Nancy's Deed. This deed did not mention or expressly except Leasha's 1/4 royalty interest or any royalty interest Gary and Nancy may have retained in their deed to GNP.
GNP defaulted on the note. After the Bank purchased the property at a foreclosure sale, the trustee-acting under GNP's Deed of Trust-conveyed the First Tract to the Bank through the fourth of the eight deeds, the Trustee's Deed. The Trustee's Deed contained the same "less, save and except" clause as the three prior deeds, except that it referred to the premises "now owned by Gary Perryman," instead of the premises "now owned by *115 Grantor." It also contained a similar warranty clause, covering "the property hereinbefore described." It did not mention Leisha's 1/4 royalty interest or any royalty interest Gary and Nancy or GNP may have retained in their prior deeds.
Although Ben's Deed had described the First Tract as containing 177 acres "more or less," a new "modern" survey conducted when the Bank acquired the First Tract concluded that the First Tract actually included about 206 acres. In the fifth of the eight deeds, the Bank conveyed the 206 acres to Dion Menser and her then-husband David Johnson.[3] The Bank's Deed did not contain a "less, save and except" clause similar to the clauses in the prior deeds, but instead excluded from the conveyance and warranty "all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens and conveyances, that affect the property."
In the sixth deed, Menser-as part of a divorce settlement-conveyed her interest in the 206 acres to Johnson via a special warranty deed, but reserved to herself "an undivided one-half (1/2) of all the oil, gas and other minerals on, in and under" the property conveyed. Menser's Deed expressly made the conveyance "subject to the terms of any valid ... mineral severance."
In the seventh deed, Johnson conveyed 28 of the 206 acres to a third party. That interest is now owned by James and Mildred Wright, who are not parties to this appeal. In the eighth and final deed, Johnson conveyed the remaining 178 acres to Spartan Texas Six Capital Partners, Ltd., and Spartan Texas Six-Celina, Ltd. Similar to Menser's Deed, Johnson's Deed to Spartan excepted "all presently recorded restrictions, reservations, covenants, conditions, oil and gas leases, mineral severances, and other instruments, other than liens and conveyances, that affect the property."
Spartan and Menser, as lessors, entered into oil-and-gas leases that the lessee later assigned to EOG Resources, Inc. Spartan's lease covered the 178-Acre Tract, while Menser's lease covered both the 178-Acre Tract and the 28-Acre Tract, since she had reserved a mineral interest in all 206 acres. According to Spartan and Menser, EOG wrongfully pooled the First Tract with horizontal wells it had drilled on an adjacent tract, even though the leases do not allow for, and Spartan refused to consent to, pooling. Spartan and Menser sued EOG for breach of the lease and for an accounting. After Spartan disclosed that a dispute existed over who owned what portions of the royalty interests, EOG counterclaimed and filed third-party claims against Gary and Nancy and Leasha (collectively, the Perrymans), seeking a declaratory judgment resolving that dispute. The Perrymans cross- and counter-claimed for a declaration of their royalty interests and moved to transfer venue to Montague County, where the property is located. The trial court denied the motion to transfer venue. The Perrymans sought mandamus relief from that ruling, but the court of appeals denied the petition. See In re Perryman , No. 14-13-00131-CV, 2013 WL 1384914 (Tex. App.-Houston [14th Dist.] Apr. 4, 2013, no pet.) (mem. op.) (per curiam).
The trial court severed the parties' royalty-interest claims from Spartan's and Menser's wrongful-pooling claims against *116 EOG. The parties then filed cross-motions for summary judgment, and the trial court granted a final summary judgment declaring, with respect to the 178-Acre Tract, that Menser and Spartan each own 3/32 of the royalty interest, Gary and Nancy own 9/16 of the royalty interest, and Leasha owns 1/4 of the royalty interest. The court also declared that the same parties own the same interests in the 28-Acre Tract, except that Spartan owns no interest in that tract. Spartan appealed, and Gary and Nancy raised conditional cross-issues in response.[4]
The court of appeals mostly disagreed with the trial court. It modified the trial court's judgment to declare that Menser, Spartan, Gary and Nancy, and Leasha each own 1/4 of the royalty interest in the 178-Acre Tract. Although its reasoning would appear to apply also to the 28-Acre Tract, the declaration language in its opinion and its judgment retained the trial court's allocation of the royalty interests in the 28-Acre Tract: Menser owns 3/32, Gary and Nancy own 9/16, and Leasha owns 1/4 of the royalty interest (the remaining 3/32 presumably belonging to the Wrights). 494 S.W.3d at 751-52. The Perrymans petitioned for this Court's review, arguing that the court of appeals erred in its allocation of the royalty interests and, alternatively, the trial court erred by denying their venue motion. EOG filed a separate petition, agreeing with the Perrymans' position regarding the royalty interests. Spartan and Menser then filed their own petition, arguing that the court of appeals erred only as to its allocation of the royalty interests in the 28-Acre Tract and also by refusing to hold that Gary and Nancy are judicially estopped to claim at least a portion of their royalty interests.
We granted all three petitions. We will first address the parties' respective royalty interests, including the judicial-estoppel argument, and then address the venue issue.
II.
The Royalty Interests
The trial court resolved this case on the parties' cross-motions for summary judgment. "When we review cross-motions for summary judgment, we consider both motions and render the judgment that the trial court should have rendered." Coastal Liquids Transp., L.P. v. Harris Cty. Appraisal Dist. , 46 S.W.3d 880, 884 (Tex. 2001) (citing Comm'rs Ct. v. Agan , 940 S.W.2d 77, 81 (Tex. 1997) ; Jones v. Strauss , 745 S.W.2d 898, 900 (Tex. 1988) ). Each party bears the burden of establishing that it is entitled to judgment as a matter of law.
*117 City of Garland v. Dall. Morning News , 22 S.W.3d 351, 356 (Tex. 2000). To resolve these royalty-interest claims, we must first determine whether Gary and Nancy are judicially estopped from claiming any interest. We conclude that they are not, and then determine the parties' royalty interests based on the deeds' language.
A. Judicial Estoppel
Gary and Nancy contend that they reserved a royalty interest when they conveyed the First Tract to GNP in 1983. Five years later, Gary declared personal bankruptcy, and he did not list any royalty interest as an asset in his bankruptcy filings. Spartan and Menser argue that Gary and Nancy are therefore judicially estopped from claiming any royalty interest in the First Tract. The trial court rejected this argument, and the court of appeals affirmed. 494 S.W.3d at 738.
"Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." Kane v. Nat'l Union Fire Ins. , 535 F.3d 380, 385 (5th Cir. 2008) (quoting In re Superior Crewboats , 374 F.3d 330, 334 (5th Cir. 2004) ). Because it is an equitable doctrine, the trial court has discretion whether to invoke it, and we review the trial court's decision for abuse of that discretion. Id. at 384. Judicial estoppel may apply against a party who claims an asset it failed to disclose in a prior bankruptcy proceeding if (1) by claiming a right to the asset, the party asserts a position that is clearly inconsistent with its failure to disclose the asset in the bankruptcy; (2) the bankruptcy court accepted and relied on the party's failure to disclose the asset; and (3) the party's failure to disclose the asset in the bankruptcy was not "inadvertent." Id. at 385-86.
Gary and Nancy primarily argue that judicial estoppel does not apply here because Gary's failure to disclose his royalty interests was inadvertent. A nondisclosure may be inadvertent if the party lacked knowledge of the asset or had no motive to conceal it. Id. at 386. Gary admitted that he knew he owned a royalty interest at the time of his bankruptcy filings and that he did not disclose it, but he testified that his failure "was an oversight." He argued that he had no motive to hide the asset from his bankruptcy creditors because no minerals were being produced from the First Tract and he had never received any royalty payments when he filed bankruptcy. In fact, no mineral leases were even signed until 2007, nearly twenty years after he filed bankruptcy. Based on this evidence, we cannot say that the trial court abused its discretion in refusing to conclude that Gary and Nancy were judicially estopped from claiming their royalty interest.
B. The Deeds
The parties' primary dispute involves the effect of the eight deeds on their respective royalty interests. Their differing positions derive primarily from their disagreement over the meaning of the "less, save and except" clause contained in the first three deeds, which excluded from the conveyances
an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Grantor. It being understood hereby that all of the rest of my ownership in and to the mineral estate in an under the above described lands is being conveyed hereby.
We construe unambiguous deeds-like any other legal instrument-as a matter of law. Luckel v. White , 819 S.W.2d 459, 461 (Tex. 1991). We "ascertain the intent of the parties from all of the *118 language within the four corners of the deed." Wenske v. Ealy , 521 S.W.3d 791, 794 (Tex. 2017) (citing Luckel , 819 S.W.2d at 461 ). When courts interpret particular language to carry a particular meaning, other parties drafting subsequent deeds often use that language in reliance on the courts' interpretation. Because our decisions "can imbue words with 'magic,' and drafters rely on that talismanic power to create certainty in their instruments," we must take care not to disturb the drafting parties' reasonable expectations. See id. at 803-04 (BOYD, J., dissenting). Deed construction requires us to traverse and reconcile well-settled principles of legal interpretation with principles of our oil-and-gas common law.
The court of appeals held that the deeds in this case "purported to grant title to the land subject to a 1/2 royalty interest in the described property." 494 S.W.3d at 746. Ben's Deed, for example, conveyed all of the interests in the First Tract to Gary and Nancy, "less, save and except" 1/2 of the royalty interests. The simple result was that Gary and Nancy owned all of the property interests except for 1/2 of the royalties, which Ben necessarily retained. After inheriting 1/4 of the royalty interest when Ben died, Gary and Nancy then owned 3/4 of the royalty interest. When they later conveyed the property to GNP through a deed using the same exclusion clause, the result becomes more complicated. If Gary and Nancy conveyed all of the property interests to GNP but reserved for themselves 1/2 of all the royalty interests, GNP should expect to receive the other 1/2 of the royalty interests. But Leasha had also inherited 1/4 of the royalty interest from Ben, so Gary and Nancy could not convey 1/2 of the royalty interests to GNP if they reserved 1/2 for themselves. And when GNP conveyed the property through the Deed of Trust using the same exclusion clause, the result becomes even more complicated. The court of appeals concluded that, because the deeds made "no mention" of the "previously excepted" royalty interests, and yet provided general warranties covering all the title purportedly conveyed, the grantors breached their warranties and thus "are estopped from claiming a royalty interest in the subject property under the Duhig doctrine." 494 S.W.3d at 746-47 ; see Duhig v. Peavy-Moore Lumber Co. , 135 Tex. 503, 144 S.W.2d 878, 880-81 (1940).
Duhig involved a deed in which W. J. Duhig conveyed land to the Miller-Link Lumber Company. Duhig , 144 S.W.2d at 879. The deed conveyed all of the interests in the land to Miller-Link, except it reserved for Duhig "an undivided one-half interest in and to all mineral rights or minerals of whatever description in the land." Id. The deed did not mention, however, that a third party already owned 1/2 of the mineral interest. Id. The deed contained a general warranty covering "the said premises," which meant "the land described in the granting clause," and therefore warranted "the full fee simple title to the land except an undivided one-half interest in the minerals." Id. at 879-80. We held that Duhig breached the warranty the moment he conveyed the property because he could not both retain 1/2 the minerals and convey 1/2 to Miller-Link when the third party already owned 1/2. Although Duhig would be liable to Miller-Link for damages, the Court recognized that, by "virtue of the deed containing the warranty," Duhig held "the very interest, one-half of the minerals, required to remedy the breach." Id. Applying an equitable remedy, the Court held that Duhig was estopped from claiming the 1/2 mineral interest he had reserved for himself; instead, Miller-Link received that interest as a remedy for Duhig's breach of the deed's warranty. Id. at 880-81.
*119 The court of appeals held here that Gary and Nancy's Deed and GNP's Deed of Trust suffer from the same failure as the Duhig deed: they purported to convey all of the interests in the First Tract but reserve 1/2 the royalty interests for the grantors, without mentioning or excepting the fractional royalty interests prior grantors had already reserved for themselves. 494 S.W.3d at 746. The grantors thus breached the deeds' warranties at the time of conveyance, but because of the reservations they held the very interests necessary to remedy the breach. The Perrymans argue, however, that the court failed to properly consider that these deeds expressly reserved only 1/2 of the royalties "now owned by Grantor." We disagree, and hold that the deeds excepted 1/2 of all the royalty interests in the premises conveyed, which premises were then owned by the grantors. But we also conclude that the deeds did not create a Duhig problem because the "less, save and except" clause created an exception from the grant, not a reservation for the grantor. We therefore reach the same basic outcome as the court of appeals, but we need not rely on Duhig estoppel to reach it.
1. "Less, save and except"
Before we address what interest is implicated in the "less, save and except" clause, we first address the function of the "less, save and except" language itself. The parties all agree that the less-save-and-except clause acts to reserve some interest to the grantor; their dispute relates only to the extent of that interest. We do not agree with the parties or the court of appeals that the "less, save and except" clause reserved any royalty interest for the grantors. Although an "exception" can refer to any "mere exclusion from the grant," a "reservation" must "always be in favor of and for the benefit of the grantor." Pich v. Lankford , 157 Tex. 335, 302 S.W.2d 645, 650 (1957). We will not find "reservations by implication." Sharp v. Fowler , 151 Tex. 490, 252 S.W.2d 153, 154 (1952). "A reservation of minerals to be effective must be by clear language." Id.
The Perrymans argue that the "now owned by Grantor" phrase makes the clause a reservation because it "effectively incorporates all prior reservations in the conveyances because it limits the interest grantor conveys to only what he owns." But as we will explain, the phrase limits the interest the deeds except; it does not purport to limit the interest the deeds convey. These deeds conveyed the entire property interest "less, save and except" a 1/2 royalty interest, and they contained no language purporting to "reserve" that excepted interest for or unto the grantors.
The same is true for any implication made by the clause's second sentence: "It being understood that all of the rest of my ownership in and to the mineral estate in and under the above described lands is being conveyed hereby." This sentence refers to the "mineral estate," not to the royalty interests, even though the right to receive royalties is one of five "severable rights" in the minerals.[5] Hysaw v. Dawkins , 483 S.W.3d 1, 9 (Tex. 2016). The sentence makes clear that the grantor conveyed all of the mineral estate except the portion of the royalty interests the prior sentence excepted. But it does not suggest that the exception was actually a reservation unto the grantor. Because the clause creates an exception and not a reservation, the deeds do not purport to both convey *120 and reserve unto the grantors more than the grantors own, so they do not present an over-conveyance or breach-of-warranty problem that would require us to consider Duhig estoppel. Ultimately, we agree with Spartan and Menser's calculations, but we need not rely on Duhig estoppel to get there.
2. "Now owned by Grantors"
The Perrymans and EOG argue that Duhig estoppel does not apply to Gary and Nancy's Deed, GNP's Deed of Trust, or the Trustee's Deed because the grantors in those deeds reserved only 1/2 of all "royalties ... which are now owned by Grantor." So, for example, when Gary and Nancy (who then owned 3/4 of the royalty interest) conveyed the First Tract to GNP, they reserved only 3/8 of the royalty interest-1/2 of the 3/4 they then owned. And in GNP's Deed of Trust, GNP reserved 1/2 of the 3/8 it then owned. Moreover, they argue, by reserving a share of the interests then "owned by Grantor," the deeds only conveyed the remainder of the share then "owned by Grantor." So for example, Gary and Nancy's Deed, they argue, conveyed to GNP only 3/8 of the royalty interests-the remaining 1/2 of the 3/4 Gary and Nancy then owned. And GNP's Deed of Trust conveyed only 3/16 of the royalty interests-1/2 of the 3/8 GNP then owned. As a result, the conveyances addressed and affected only the fraction of the royalty interests the grantors then owned, and did not affect the fractions that were then owned by others.
The Perrymans and EOG acknowledge that the deeds did not mention or expressly exclude the fractional royalty interests then owned by other parties, but they contend that the deeds' reference to the interests "now owned by Grantor" put the grantees on notice that the grantors did not own all of the interests and thus imposed on the grantees a duty to determine the interests conveyed by researching the relevant property records. See TEX. PROP. CODE § 13.002 ("An instrument that is properly recorded in the proper county is ... notice to all persons of the existence of the instrument."); Tex. Dept. of Transp. v. A.P.I. Pipe and Supply, LLC , 397 S.W.3d 162, 169 (Tex. 2013) (holding grantee was deemed to have notice of all recorded instruments in chain of title); Westland Oil Dev. Corp. v. Gulf Oil Corp. , 637 S.W.2d 903, 908 (Tex. 1982) (holding grantee is charged with notice of every matter set forth within the chain of title); Bass v. Harper , 441 S.W.2d 825, 827 (Tex. 1969) (holding grantee is charged with notice of reservations in chain of title). As EOG argues in its brief, "when the grantor conveys only what the grantor owns, ... the avoidance of Duhig does not require the grantor to 'mention' the interests it does not own because such interests are not represented to be owned or conveyed," so there "is no need to reserve specifically what is not purported to be conveyed." See, e.g. , Clark v. Gauntt , 138 Tex. 558, 161 S.W.2d 270, 272 (1942) (holding deed in which grantor-who owned only an undivided 1/2 interest in the land-conveyed "all my right, title, and interest" and warranted only "title to said property conveyed herein" conveyed only the interest she then owned and warranted only that which she conveyed). We cannot accept this construction of these deeds for at least two reasons, one grammatical and one operational.
First, the clause's grammatical structure and punctuation indicate that the phrase "which are now owned by Grantor" modifies the term "premises," which immediately precedes that phrase, and not the term "royalties," which appears much earlier in the clause. See Sullivan v. Abraham , 488 S.W.3d 294, 297 (Tex. 2016). Sullivan involved a statutory provision *121 that requires courts to award "court costs, reasonable attorney's fees, and other expenses incurred in defending against the legal action as justice and equity may require ." See TEX. CIV. PRAC. & REM. CODE § 27.009(a) (emphasis added). The issue was whether the justice-and-equity phrase modified "court costs" and "reasonable attorney's fees," so that the court could award less than the party's reasonable attorney's fees if "justice and equity" required, or only the phrase "other expenses incurred in defending against the legal action." Sullivan , 488 S.W.3d at 297. We noted that under the last-antecedent construction canon,[6] the justice-and-equity phrase would modify only the award of "other expenses incurred," but under the series-qualifier canon,[7] it would modify all three items listed. Id. We concluded that either canon might reasonably apply to the statute, but the absence of a comma after "other expenses" or "legal action" "indicates an intent to limit the justice-and-equity modifier to the last item in the series." Id. at 298.
Here, the exclusion clause saves and excepts from the conveyance "an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Grantor." (Emphasis added.) At the time of Gary and Nancy's Deed, GNP's Deed of Trust, and the Trustee's Deed-each of which contained this clause-the grantors owned all of the minerals and all of the premises but only a fraction of the royalties. As in Sullivan , we conclude that the absence of a comma after the term "premises" indicates an intent to limit the now-owned-by-Grantor modifier "to the last item in the series." If the clause had separated the now-owned-by-Grantor phrase from the rest of the clause by including a comma after the word premises, it might indicate an intent that the phrase modify "royalties," "minerals," and "premises," or perhaps even just the term "royalties." And it certainly would have indicated that intent had it saved and excepted 1/2 "of all royalties which are now owned by Grantor, from the production of ... minerals ... produced from the above described premises."
Although the last-antecedent doctrine is "neither controlling nor inflexible," City of Corsicana v. Willmann , 147 Tex. 377, 216 S.W.2d 175, 176 (1949), we conclude that the most reasonable grammatical construction of this deed is that the clause excepts 1/2 of all royalties from the minerals produced from the "premises which are now owned by Grantor." (Emphasis added.) And since each of the grantors owned all of the premises described in each deed, the clause excepted 1/2 of all the royalties produced from those premises. See, e.g. , In re C.J.N.-S. , No. 16-0909, 540 S.W.3d 589, 590-92 (Tex. 2018) (applying last-antecedent doctrine to statute that grants standing to "a parent of the child or another person having physical custody or guardianship of the child under a court order," and holding that phrase "under a court order" does not modify the phrase "a parent of the child").
*122 The Perrymans and EOG, however, rely on two court of appeals decisions they contend reach the opposite result. The first, Stewman Ranch, Inc. v. Double M Ranch, Ltd. , involved a deed in which the grantor, who owned all of the surface and minerals but not all of the royalty interests, conveyed the premises but reserved 1/2 "of the royalties to be paid on the production of oil, gas and other hydrocarbons from the described lands which are presently owned by Grantors ." 192 S.W.3d 808, 810 (Tex. App.-Eastland 2006, pet. denied) (emphasis added). The court concluded that the "presently owned by Grantors" phrase was a restrictive dependent clause that modified the term "royalties," and not the phrase "the described lands," because construing it to modify "the described lands" would "render the use of 'which are presently owned by Grantors' superfluous." Id. at 812-13. Thus, the phrase was a "restrictive clause" that "signals that there are other things in the universe it defines," rather than a "nonrestrictive clause" that "signal[s] that there are no other things in the universe described." Id. (citing THE CHICAGO MANUAL OF STYLE 249-50 (15th ed. 2003); THE AMERICAN HERITAGE BOOK OF ENGLISH USAGE 39 (1996) ).
The second case on which the Perrymans and EOG rely, Hunsaker v. Brown Distributing Co. , involved a deed in which the grantor, who owned all of the property but only 1/4 of the mineral interest, conveyed all of the property-described as 1,120 acres of land, more particularly described by metes and bounds-and then expressly "included in this conveyance one-half (1/2) of all ... minerals ... and all rights and appurtenances thereto in, on and under said property now owned by Grantor. " 373 S.W.3d 153, 155 (Tex. App.-San Antonio 2012, pet. denied) (emphasis added). The deed also excepted and reserved "unto Grantor" an "undivided one-half (1/2) of all the ... minerals and mineral rights ... in, on, upon or underlying said premises ...." Id. at 156. Relying on Stewman Ranch , the court held that the grantor "conveyed only one-half of his [1/4] mineral interest in the property," and reserved for himself only the other 1/2 of the 1/4 mineral interest he then owned, because only that construction would "give effect to all of the deed's provisions" Id. at 157-58.
We neither approve nor disapprove of the courts' holdings in those two cases, but we conclude that they are distinguishable from this case because, as both those courts noted, those deeds expressly disclosed that other parties owned a portion of the interest at the time of the conveyance and expressly excepted those interests from the interests conveyed. See Hunsaker , 373 S.W.3d at 157 (explaining that the deed expressly identified prior reservations of 3/4 of the mineral interest and expressly made the conveyance "subject to all reservations ... now outstanding and of record"); Stewman Ranch , 192 S.W.3d at 810 (explaining that the deed included express "reservations for recorded oil, gas, and mineral leases and other recorded reservations of minerals and royalties"). As a result, both deeds made it "clear" that the grantors "could not own" all of the interests otherwise conveyed (in Hunsaker ) or reserved (in Stewman Ranch ). Hunsaker , 373 S.W.3d at 158 & n.2. Within the context of a deed that discloses and excepts a fractional royalty interest now owned by others, a clause in which the grantor reserves for himself a fraction of the "royalties produced from the premises now owned by grantor" may indeed reserve only a fraction of the royalties the grantor now owns.
But here, the deeds neither disclosed nor excepted any prior conveyances, exceptions, or reservations. Ben's Deed included *123 a clause subjecting the conveyance to "all restrictions [and] reservations, ... if any, affecting the above described property," but the parties agree that Ben owned all of the First Tract interests at the time of that deed. Gary and Nancy's Deed, GNP's Deed of Trust, and the Trustee's Deed, however, contained no such clause.
Nor are we convinced by the Hunsaker and Stewman Ranch courts' concern that applying the now-owned-by-Grantor phrase to modify the premises described would render the phrase surplusage or meaningless. If "now owned by Grantor" modifies the term premises, which we hold it does, its import in the absence of any language disclosing or excepting an interest now owned by others is to affirm that the grantors did in fact then own all of the premises described. And in fact, they did. The phrase served to further identify the premises that the deeds purported to convey. See, e.g. , Burns v. Goodrich , 392 S.W.2d 689, 692 (Tex. 1965) (holding that deed's reference to interest "which [grantor] inherited from his parents" was not a limiting clause restricting the grant but an "identifying reference" to the interest conveyed); Rutherford v. Randal , 593 S.W.2d 949, 951-93 (Tex. 1980) (holding that deed's reference to interest as that which grantor "received from his deceased parents" did not alter the conveyance and instead was an "identifying reference" to the land in which the interest was conveyed).
The second reason we find the Perrymans' and EOG's construction unconvincing is that the now-owned-by-Grantor phrase in these deeds describes the interest the deeds "save and except" from the conveyance, not the interest the deeds convey. As the Perrymans and EOG note, we have recognized that a deed that conveys only that which the grantor owns generally puts the grantee on notice that the grantor may not own all of the interests in the premises described. See, e.g. , Bass , 441 S.W.2d at 827 (noting that deed would not result in an over-conveyance if it included language "limiting the grant to one-half of whatever interest [grantor] owned") (emphasis added); Newsom v. Newsom , 378 S.W.2d 842, 844 (Tex. 1964) (holding that deed that conveyed all of a tract "now owned by grantors" conveyed only that which grantors then owned); Clark , 161 S.W.2d at 272 (holding that deed that conveyed "all my right, title, and interest" conveyed only the interest grantor then owned); Miller v. Pullman , 72 S.W.2d 379, 383-84 (Tex. Civ. App.-Galveston 1934, writ ref'd) (holding that deed that conveyed all property grantor then owned in Harris County was at most a quitclaim as to two Harris County tracts grantor had previously sold); see also Benge v. Scharbauer , 152 Tex. 447, 259 S.W.2d 166, 168 (1953) (explaining that deed warranted only "the title to what it purported to convey").
The clause at issue here, however, describes the interest excepted, not the interest conveyed. We do not agree that the same principle applies when the now-owned-by-grantor language describes that which is excepted from the grant. The Perrymans and EOG argue that by excepting a portion of the interests "now owned by Grantor," the deeds only conveyed the remainder of the interests the grantor then owned. We disagree. Although language limiting a conveyance to a portion of the interest the grantor owns may imply that the grantor does not own and cannot convey all of the interests, an exception of a portion of the interest the grantor then owns does not. A deed that conveys all of the property interests but excepts a fraction of the interest the grantor now owns necessarily conveys all of the interests not *124 excepted. A deed conveys all it purports to convey less what is excepted. See Cockrell v. Tex. Gulf Sulphur , 157 Tex. 10, 299 S.W.2d 672, 675 (1956) ; King v. First Nat'l Bank , 144 Tex. 583, 192 S.W.2d 260, 262 (1946). Here, the deeds granted, conveyed, and warranted all of the First Tract, including all of the surface, mineral, and royalty interests, less the excepted interests, and thus conveyed everything except 1/2 of the interest the grantors then owned. A reference to the interests now owned by the grantor to describe what is excepted from the conveyance is insufficient to negate the implication that the grantor owns all of the interests, at least when no other language suggests otherwise. These deeds saved and excepted a portion of the interests the grantors then owned, but gave no indication that they did not then own all of the royalty interests, just like they then owned all of the minerals and the premises. On their face, the deeds granted and conveyed all of the interests in the property except for a portion of the interests the grantors then owned; they did not grant and convey the interests the grantors then owned except for a portion of those interests.
Alternatively, EOG argues that this chain of deeds ultimately avoids any over-conveyance or Duhig problem even if none of the deeds had included the now-owned-by-Grantor phrase. Specifically, EOG argues that, because the eighth deed-Johnson's Deed conveying the 178-Acre Tract to Spartan-expressly excepted "all presently recorded restrictions, reservations, ... mineral severances, and other instruments," the interest Spartan received was necessarily limited by the exceptions included in all of the preceding deeds. EOG contends that it "would be contrary to the purpose of the [ Duhig -estoppel doctrine] for Spartan, having agreed to these exceptions and reservations, to be able to invoke the [doctrine] against remote grantors in their chain of title." While we agree that the earlier deeds limit the interest Spartan ultimately received, the extent to which they limit Spartan's interest depends on the proper construction of those deeds. Johnson's Deed, standing alone, could not alter the amount of royalties each party received as a result of the prior deeds.
We conclude that Gary and Nancy's Deed, GNP's Deed, and the Trustee's Deed each purported on its face to convey to the grantee all of the interests in the First Tract's surface, minerals, and royalties, "less, save and except" 1/2 of all the royalties from the minerals produced from the "described premises which [were then] owned by Grantor." As a result, the deeds purported to convey 1/2 and except 1/2 of all of the First Tract's royalty interests, not just one half of the royalty interest the grantors then owned. We now turn to the effect of those conveyances and then determine the parties' respective royalty interests.
3. The parties' royalty interests
To determine the parties' current royalty interests, we must apply the proper construction of the exception clauses to ascertain the effect of each deed in the chain. We will begin with Ben's Deed and then address each subsequent deed in turn. As explained, the first six of the eight deeds involved all of the First Tract, which the parties now agree contains 206 acres. Johnson then conveyed the 206 acres through two separate transactions in the seventh and eighth deeds: (1) a deed conveying about 178 acres, which is undisputedly part of the First Tract that Ben conveyed to Gary and Nancy, and (2) a deed conveying about 28 acres to third parties in 1996 and now presumptively owned by the Wrights. Because Spartan indisputably owns no interest in the 28-Acre Tract, and because the court of appeals reached different *125 conclusions as to the royalty ownerships in the two tracts, we will address the two tracts separately when we address the last two deeds. Ultimately, we conclude that Spartan owns a 1/4 royalty interest in the 128-Acre Tract and that Leasha, Gary and Nancy, and Menser each own a 1/4 royalty interest in both of the tracts.
a. Ben's Deed
The parties agree that Ben's Deed conveyed all of the surface, mineral, and royalty interests in the First Tract to Gary and Nancy, except for 1/2 of all the royalty interest. And because Ben owned all of the fee-simple interest in the entire estate at the time of the grant, the 1/2 royalty interest excepted from the grant necessarily remained with Ben, rather than passing to the grantees or remaining outstanding in another. Although Ben's Deed did not expressly "reserve" the 1/2 royalty interest for himself, "the legal effect of the language excepting it from the grant was to leave it to the grantor." Pich , 302 S.W.2d at 650.
The parties also agree that after Ben died, Wade and Gary each received a 1/4 royalty interest-1/2 of Ben's 1/2. And after Wade later died, Leasha received his 1/4 royalty interest. In short, everyone agrees that Ben's Deed and Ben's and Wade's deaths resulted in the following respective interests in the First Tract:
The effect of Ben's Deed Surface Estate Mineral Interest Royalty Interest Gary & Nancy: 3/4 Gary & Nancy: 100% Gary & Nancy: 100% Leasha: 1/4
b. Gary and Nancy's Deed
Gary and Nancy used an identical exception clause in their deed to GNP, and nothing in the deed suggests that they intended the clause to carry a different meaning. The deed thus conveyed all of the interests in the First Tract to GNP, except for 1/2 of all the royalty interests. But it did not "reserve" that 1/2 interest for Gary and Nancy; it merely excepted 1/2 of all the royalties from the conveyance. The deed did not create a Duhig problem because Gary and Nancy could convey 1/2 of the royalties to GNP without breaching their warranty since they owned 3/4 of the royalty interest at the time of the conveyance. But the 1/2 interest the deed excepted must include the 1/4 that then belonged to Leasha lest Gary and Nancy breach their warranty. See Harris v. Windsor , 156 Tex. 324, 294 S.W.2d 798, 800 (1956) (holding that if a construction of a deed creates a breach of warranty, "such construction would not serve the ends of justice, and should be adopted only if demanded by [our] rules"). So:
*126 The effect of Gary and Nancy's Deed Surface Estate Mineral Interest Royalty Interest Gary & Nancy: 1/4 GNP: 100% GNP: 100% Leasha: 1/4 GNP: 1/2
c. GNP's Deed of Trust
Like Gary and Nancy's Deed, GNP's Deed of Trust used an identical exclusion clause and nothing in the deed suggests that GNP intended the clause to carry a different meaning. As explained, the deed conveyed all of the property interests except 1/2 of all the royalty interest. Because GNP only owned 1/2 of the royalty interest, and the other 1/2 was already vested in others (Leasha and Gary and Nancy), none of the royalty interest remained with GNP. So:
The effect of the Deed of Trust Surface Estate Mineral Interest Royalty Interest Gary & Nancy: 1/4 Trustee: 100% Trustee: 100% Leasha: 1/4 Trustee: 1/2
d. The Trustee's Deed
The Trustee's Deed conveying the foreclosed property to the Bank noted that GNP had conveyed to the Trustee "that certain tract or parcel of land ... to wit:" the First Tract. Following the metes-and-bounds description, the Trustee's Deed included the following exception clause:
LESS, SAVE AND EXCEPT an undivided one-half (1/2) of all royalties from the production of oil, gas and/or other minerals that may be produced from the above described premises which are now owned by Gary Perryman , it being understood that all of the rest of my ownership in and to the mineral estate in and under the above described lands is being conveyed hereby. (Emphasis added.)
As Gary had previously conveyed most of his interest to GNP-and it was GNP that conveyed the property to the Trustee-this clause's reference to the interest "now owned by Gary Perryman" is odd, and it does not track the language from the Deed of Trust. The parties do not address the clause's reference to Gary (instead of to Grantor) in their briefs. At oral argument, the Perrymans' counsel suggested that the purpose and effect of this deed and this clause was to "accomplish the exclusion ... of things they did not own" and "implicate what came from the foreclosure." Or it could be that the Trustee (who was then the grantor) meant to reserve minerals to himself or to except from the conveyance an interest from the property he held in trust. We reject these interpretations, however, because not only *127 do they violate the reservation-by-implication rule,[8] but they would also suggest that the trustee intended to violate his fiduciary duties. See Hammonds v. Holmes , 559 S.W.2d 345, 347 (Tex. 1977) ("The trustee ... is imposed with a particular legal responsibility. He must act with absolute impartiality and fairness to the grantor in performing the powers vested in him by the deed of trust.").
We therefore construe the clause as part of the description of property the Trustee held in trust on behalf of the Bank. This is certainly a different function of the nearly identical language found in the preceding deeds, but the Trustee stands in a different position from the grantors in the prior deeds. He held only equitable title in trust for another. The particulars of the Trustee's Deed, including its purpose (to convey to the Bank all the property that the Trustee held in trust from GNP), exhibit no intention to except anything from the conveyance, and the exception language is merely part of the description of the property held in trust. Thus, we conclude the Trustee's Deed conveyed to the Bank all that GNP had conveyed to the Trustee:
The effect of the Trustee's Deed Surface Estate Mineral Interest Royalty Interest Gary & Nancy: 1/4 Bank: 100% Bank: 100% Leasha: 1/4 Bank: 1/2
e. The Bank's Deed
The deed from the Bank to Menser and Johnson conveyed the Bank's entire interest in the First Tract subject to "all presently recorded ... reservations [and] mineral severances." It did not include a "less, save and except" clause referring to any interest then owned by the grantor. Thus:
The effect of the Bank's Deed Surface Estate Mineral Interest Royalty Interest Gary & Nancy: 1/4 Menser & Johnson: Menser & Johnson: 100% 100% Leasha: 1/4 Menser & Johnson: 1/2
f. Menser's Deed
Although the parties do not expressly address the issue, they appear to agree that, when Menser and Johnson divorced, *128 they were each entitled to 1/2 of their community interest in the First Tract. As part of the divorce settlement, however, Menser conveyed her interest to Johnson via a special warranty deed, but reserved 1/2 of the mineral interest for herself and expressly made the conveyance "subject to the terms of any valid ... mineral severance." Menser therefore conveyed and warranted the entire First Tract to Johnson, less any prior mineral severances and less 1/2 of the minerals. By reserving 1/2 of the mineral estate, Menser purported to reserve for herself 1/2 of the royalties, thereby conveying none of the royalties to Johnson. But as a result of the divorce, Johnson already owned 1/4 of the royalties and Menser owned 1/4. He expected to receive by the deed the entire surface estate, which he did receive. He expected to own 1/2 of the mineral estate, and he did already own 1/2 of the minerals. The parties appear to agree that, whatever royalty interests the parties may have owned, Menser's deed in effect conveyed only Menser's 1/2 interest in the surface to Johnson. So:
The effect of Menser's Deed Surface Estate Mineral Interest Royalty Interest Johnson: 1/2 Gary & Nancy: 1/4 Leasha: 1/4 Johnson: 100% Menser: 1/4 Menser: 1/2 Johnson: 1/4
g. Johnson's Deed to Spartan (the 178-Acre Tract)
Johnson then conveyed his entire interest in 178 of the 206 acres to Spartan, subject to "all presently recorded ... reservations ... [and] mineral severances." Thus, the proper, present division of property interests in the 178-Acre Tract is:
The effect of Johnson's Deed to Spartan (the 178-Acre Tract) Surface Estate Mineral Interest Royalty Interest Gary & Nancy: 1/4 Spartan: 1/2 Leasha: 1/4 Spartan: 100% Menser: 1/4 Menser: 1/2 Spartan: 1/4
The court of appeals' opinion accurately reflects these interests in the 178-Acre Tract.
h. Johnson's Deed to Others (the 28-Acre Tract)
The trial court declared that Menser now owns 3/32 of the royalty interest, Gary and Nancy own 9/16 of the royalty *129 interest, and Leasha owns 1/4 of the royalty interest in both the 178-Acre Tract and the 28-Acre Tract. The court of appeals held that the parties each own 1/4 of the royalties in the 178-Acre Tract. But without explaining why its reasoning would not also apply to the 28-Acre Tract, the court's judgment awarded the trial court's royalty allocations in the 28-Acre Tract instead of 1/4 to each party. Menser argues that the court of appeals erred by awarding her only a 3/32 royalty interest in the 28-Acre Tract, instead of a 1/4 royalty interest. The parties agree that the 28-Acre Tract is part of the 206 acres that the earlier deeds conveyed as the First Tract and that Menser conveyed to Johnson while reserving 1/2 one-half of the minerals, including one-half of the royalties she owned at the time.
In the court of appeals, Menser argued that the Perrymans never requested an interest in the 28-Acre Tract in their motions for summary judgment and therefore the trial court's judgment assigning them any interest in the tract was in error. The court of appeals held that Menser waived her argument by failing to raise it in the trial court. 494 S.W.3d at 750. Although the court of appeals agreed with Menser's argument regarding the division of the royalty interests in the 178-Acre Tract-and modified the trial court's judgment to reflect that-it did not modify the relative interests in the 28-Acre Tract. Id. at 752. On motion for rehearing and on motion for rehearing en banc, Menser argued that the court of appeals should modify its judgment to correct that mathematical error. The court denied the motions.
In this Court, Menser reurges her rehearing arguments. We agree that, even if Menser waived her argument that the Perrymans owned no interest in the 28-Acre Tract, she did not waive her argument that the court of appeals should have reexamined the division of royalty interests in that tract. Menser consistently argued that the Perrymans', Spartan's, and Menser's interests all stem from the land in Ben's First Tract and that Duhig applied to estop Gary and Nancy from claiming more than they could convey to remedy their breach of warranty. Although we disagree that Duhig applies, we agree with Menser's ultimate claim that the royalty interests are divided equally among the parties: Leasha, Gary and Nancy, and Menser each own a 1/4 royalty interest in both tracts, Spartan owns a 1/4 royalty interest in the 178-Acre Tract, and third parties (presumably, the Wrights) own a 1/4 royalty interest in the 28-Acre Tract:
*130 III.
Venue
We now address the Perrymans conditional cross-point that the trial court should have transferred venue to Montague County. Spartan filed its suit against EOG in Harris County in May 2011. In October 2012, EOG joined the Perrymans as third-party defendants and filed a cross-claim for a declaratory judgment regarding the apportionment of the royalty interests. The Perrymans filed a motion to transfer venue in November 2012, arguing that because EOG's claim against them involved real property, the mandatory venue statute requires that the case be transferred to the county where the property is located-Montague County. See TEX. CIV. PRAC. & REM. CODE § 15.011.
The trial court denied the motion. Although venue would normally be determined under section 15.011 as the Perrymans argue, the trial court noted that section 15.062 states that third-party claims arising out of the same transaction "shall be" determined in the same venue as the original suit. See id. § 15.062. The Perrymans sought mandamus relief in the court of appeals, which denied the Perrymans' petition. Perryman , 2013 WL 1384914, at *1 ; see TEX. CIV. PRAC. & REM. CODE § 15.0642 ("A party may apply for a writ of mandamus with an appellate court to enforce the mandatory venue provisions of this chapter."). The Perrymans then sought relief from this Court. We likewise denied the Perrymans' petition for mandamus relief.[9] Like the court of appeals, we will assume without deciding for the purpose of argument that the Perrymans may raise this issue on appeal after failing to secure mandamus relief.
Venue may be proper under general, mandatory, or permissive venue rules. See TEX. CIV. PRAC. & REM. CODE §§ 15.001 -.040. Mandatory venue rules may also designate multiple counties as proper. See In re Fisher , 433 S.W.3d 523, 533 (Tex. 2014). The plaintiff makes the first choice of venue by filing the lawsuit. Wilson v. Tex. Parks & Wildlife Dep't , 886 S.W.2d 259, 260 (Tex. 1994). When the plaintiff files in a "proper" venue, "that choice of venue should be honored absent a mandatory venue statute that requires transfer." In re Omni Hotels Mgmt. Corp. , 159 S.W.3d 627, 629 (Tex. 2005) (citing GeoChem Tech Corp. v. Verseckes , 962 S.W.2d 541, 544 (Tex. 1998) ). "Proper" venue is defined by statute as
(1) the venue required by the mandatory provisions of Subchapter B ["Mandatory Venue"] or another statute prescribing mandatory venue; or
(2) if Subdivision (1) does not apply, the venue provided by this subchapter or Subchapter C ["Permissive Venue"].
TEX. CIV. PRAC. & REM. CODE § 15.001(b). Thus, when both a mandatory and a permissive venue statute apply to a suit, the permissive statute must yield to the mandatory statute. See Langdeau v. Burke Inv. Co. , 163 Tex. 526, 358 S.W.2d 553, 556 (1962). A trial court's erroneous denial of a motion to transfer venue requires the judgment's reversal and a remand for new trial. Wichita Cty. v. Hart , 917 S.W.2d 779, 781 (Tex. 1996) (citing TEX. CIV. PRAC. & REM. CODE § 15.064(b) ; Ruiz v. Conoco, Inc. , 868 S.W.2d 752, 757 (Tex. 1993) ).
Here, Spartan sued EOG for breach of contract and for an accounting in Harris *131 County, EOG's principal place of business, under the general venue statute. See TEX. CIV. PRAC. & REM. CODE § 15.002(a) ("Except as otherwise provided by this subchapter or Subchapter B or C, all lawsuits shall be brought: ... in the county of the defendant's principal office in this state, if the defendant is not a natural person ...."). EOG did not complain that venue was improper, although when it added the Perrymans as third-party defendants, it noted that Montague County was the mandatory and proper venue for its claims against the Perrymans. However, it asserted that the Harris County court had jurisdiction over the third-party claims "because Spartan's and Menser's claims regarding the lease are already pending in this action." It went on:
Because this pleading raises the issue of title to the royalty interest for the first time in this action, and because the Third Party Defendants are now joined as parties for the first time, EOG anticipates that the Third Party Defendants will likely move to transfer venue of this action to Montague County, Texas. If they do move for venue transfer, EOG submits that this action should be transferred to Montague County, Texas.
Although the Perrymans did indeed move to transfer venue, EOG never contested venue on its own motion and nothing in the record indicates that it filed anything in support of the Perrymans' motion.
If the Perrymans were the original defendants to the main action, our statutes would have required the trial court to transfer venue on the Perrymans' motion. See GeoChem , 962 S.W.2d at 544. However, the Perrymans were joined as third-party defendants. And the venue statutes also state: "Venue of the main action shall establish venue of a counterclaim, cross claim, or third-party claim properly joined under the Texas Rules of Civil Procedure or any applicable statute." TEX. CIV. PRAC. & REM. CODE § 15.062(a). The Perrymans were properly joined by EOG, which then filed a proper third-party claim against them. Thus, section 15.062(a) appears to apply.
This raises the question of whether section 15.062(a) is also a mandatory provision like section 15.011 (the real property venue statute). By its plain and common meaning, "shall" denotes mandatory action. See TEX. GOV'T CODE § 311.016(2) (" 'Shall' imposes a duty."). And we have held that the phrase "shall bring suit" is "unmistakably mandatory." Wichita Cty. , 917 S.W.2d at 783 (citing Mingus v. Wadley , 115 Tex. 551, 285 S.W. 1084, 1087 (1926), overruled on other grounds by Dubai Petroleum Co. v. Kazi , 12 S.W.3d 71 (Tex. 2000) ); see Fid. Union Life Ins. Co. v. Evans , 477 S.W.2d 535, 536 (Tex. 1972) (holding that venue provision stating that case "shall be returnable to and tried in" a certain county was "mandatory and is controlling over other statutory exceptions to the venue statute"). However, we have noted that the use of "shall" "is not necessarily determinative that a statute is mandatory." Cassidy v. Fuller , 568 S.W.2d 845, 847 (Tex. 1978) (holding that venue provision in the Family Code "clearly" intended its use of "shall" to be mandatory) (citing Chisholm v. Bewley Mills , 155 Tex. 400, 287 S.W.2d 943 (1956) ). In Langdeau , for instance, we held that "a declaration that 'venue shall lie' in a certain county is not equivalent to a command that the suit 'must be brought' in that county. 358 S.W.2d at 555. It merely signifies an intention to give the plaintiff the legal right, if he chooses, to maintain such a suit there." See id. at 555-56 ("While that subdivision is expressed in mandatory terms, it does not convert a merely permissive venue provision, wherever it may be found, into a mandatory prescription."). Importantly, though, we noted that the venue statute at issue in *132 Langdeau did not provide "that the actions mentioned therein shall or must be brought in the county." Id. at 554.
The third-party-venue statute states that the main action "shall establish venue" for properly joined third-party claims. TEX. CIV. PRAC. & REM. CODE § 15.062(a). "Shall establish" is not similar to "shall lie"; it does not indicate permission, it denotes a requirement. See Establish , BLACK'S LAW DICTIONARY (10th ed. 2014) ("To settle, make, or fix firmly; to enact permanently."). We therefore hold that section 15.062(a) is a mandatory venue provision.
The Perrymans argue, however, that section 15.062(a) is limited by section 15.062(b). Subsection (b) states:
If an original defendant properly joins a third-party defendant, venue shall be proper for a claim arising out of the same transaction, occurrence, or series of transactions or occurrences by the plaintiff against the third-party defendant if the claim arises out of the subject matter of the plaintiff's claim against the original defendant.
TEX. CIV. PRAC. & REM. CODE § 15.062(b). The Perrymans argue that subsection (b) means that the main dispute's venue determines the venue of third-party claims only when the third-party claims "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences by the plaintiff." This reading is not persuasive.
The Perrymans joined this suit as third-party defendants brought in by EOG. Our Rules of Civil Procedure allow "a defending party, as a third-party plaintiff, [to] cause a citation and petition to be served upon a person not a party to the action who is or may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him." TEX. R. CIV. P. 38(a). When brought in as a third-party defendant, a third party may assert defenses against the defendant's claim against him and the plaintiff's claim against the defendant. Id. Rule 38(a) also states
The third-party defendant may also assert any claim against the plaintiff arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff. The plaintiff may assert any claim against the third-party defendant arising out of the transaction or occurrence that is the subject matter of the plaintiff's claim against the third-party plaintiff , and the third-party defendant thereupon shall assert his defenses and his counterclaims and cross-claims.
Id. (emphasis added). Rule 38(a) makes clear that if a plaintiff wishes to bring a claim against a third-party defendant, that claim must arise out of the transaction or occurrence forming the basis of the plaintiff's claim against the original defendant. See id. (defining "third-party plaintiff" as the "defending party" to the original suit). This limitation prevents plaintiffs from gaming the system to avoid strictures such as venue by waiting until a defendant joins a third-party before the plaintiff asserts a claim against him.
Read in light of our rules of civil procedure, subsection 15.062(b) allows proper venue for "a claim ... by the plaintiff against the third-party defendant" if the claim against the third-party defendant arises out of the same transaction or occurrence and the same subject matter as the plaintiff's claim against the original defendant. TEX. CIV. PRAC. & REM. CODE § 15.062(b) (emphasis added). In this case, the original plaintiffs, Spartan and Menser, brought no claim against the Perrymans. Only EOG did. Thus, subsection (b) does not apply here.
We are therefore presented with two counties of mandatory venue. At least *133 twice before we have faced competing mandatory venue provisions. In Brown v. Gulf Television Co. , 157 Tex. 607, 306 S.W.2d 706, 709 (1957), the plaintiff sought to quiet title to land and also requested injunctive relief. We noted that the "directions" of two relevant venue articles of the former statutes were "stated in mandatory terms." Id. at 708. We held that they did not conflict, however, because the request for injunctive relief was "merely ancillary" to the "primary and principal relief sought." Id. Our holding in Brown indicates that the plaintiff's choice of "primary relief" dictates the governing venue provision. Id. at 709.
In Fisher , we again faced two competing mandatory venue provisions. 433 S.W.3d at 533-34. The causes of action concerned both a "major transaction," requiring venue in the county on which the parties had agreed in writing, see TEX. CIV. PRAC. & REM. CODE § 15.020(c), and defamation, requiring venue in the home county of the plaintiff or the defendant, see id. § 15.017. However, in that case, the major-transaction statute include language stating that it was to apply "[n]otwithstanding any other provision of this title." Id. § 15.020(c). This proviso, we held, indicated "that the Legislature intended for it to control over other mandatory venue provisions." Fisher , 433 S.W.3d at 534 (citing Molinet v. Kimbrell, 356 S.W.3d 407, 413-14 (Tex. 2011) ).
In reconciling these two provisions, our analysis in Wilson is useful. There, we considered the venue statutes together with our rules of civil procedure to hold that "if the plaintiff chooses a county of proper venue, ... no other county can be a proper venue in that case." 886 S.W.2d at 261. Such a reading, we held, "gives effect to the plaintiff's right to select a proper venue." Id. (citing Maranatha Temple, Inc. v. Enter. Prods. Co. , 833 S.W.2d 736, 741 (Tex. App.-Houston [1st Dist.] 1992, writ denied) ). Similarly, holding here that the third-party-venue provision controls over other mandatory venue provisions gives effect to both provisions while honoring the general rule that the plaintiff makes the first choice of appropriate venue. See Omni Hotels Mgmt. Corp. , 159 S.W.3d at 629. We therefore hold that venue was proper in Harris County and the trial court did not err in denying the Perrymans' motion to transfer venue.
IV.
Conclusion
We affirm that part of the court of appeals' judgment declaring that Menser, Spartan, Leasha, and Gary and Nancy each own a 1/4 royalty interest in the 178-Acre Tract. We modify the court of appeals' judgment to reflect that Menser, Leasha, and Gary and Nancy each own a 1/4 royalty interest in the 28-Acre Tract. We affirm the court of appeals' judgment as modified.
Justice Blacklock did not participate in the decision.

Ben's Deed described the First Tract by metes and bounds and referred to it as containing 177 acres, "more or less." As discussed further below, a newer survey concluded that it actually contains about 206 acres. A subsequent owner later sold the 206 acres through two transactions, one conveying 28 acres and the other conveying the remaining 178 acres. We will refer to the full 206 acres as the First Tract, and then separately to the 178-Acre Tract and the 28-Acre Tract after the First Tract was divided. In addition to the First Tract, Ben's Deed also conveyed two other tracts to Gary and Nancy, but those are not at issue here.

Wade actually died in 2008, some thirty years after many of the deeds at issue. However, no one disputes that Wade owned a 1/4 royalty interest at the time of his death and that Leasha now owns that interest. We substitute Leasha for Wade at this point in the story to simplify our explanation of the relevant facts.

For reasons unimportant to the issues here, the Bank's Deed described three separate tracts that together total the 206 acres, which the deed described as "being part of the First Tract" or "being occupied with the First Tract."

EOG filed a separate brief in the court of appeals, which Spartan and Menser moved to strike. Spartan Texas Six Capital Partners, Ltd. v. Perryman, 494 S.W.3d 735, 738 n.1 (Tex.App.-Hous. [14 Dist.] 2016). The court of appeals carried the motion with the case and allowed EOG to participate in argument. The court ultimately struck EOG's brief and removed EOG as a party to the appeal. Id. The court concluded that following the settlement and severance of the original case, EOG had no remaining interest adverse to Spartan and therefore could not be an "appellee," defined as "a party adverse to an appellant." Id. ; Tex. R. App. P. 3.1(c). EOG filed its own petition for review and briefs on the merits before this Court advocating for Gary and Nancy's position and asking us to recognize it as a party to this appeal. In the alternative, EOG requests that we treat its briefs as amicus briefs. See Tex. R. App. P. 11. Although EOG may not be "adverse" to Spartan and Menser because those parties have settled their claims, EOG was a party to the trial court's judgment. Ultimately, however, whether EOG is a party does not impact the other issues in this case, so we need not reach that issue, and the Court will alternatively consider its brief as an amicus.

The five rights are: "1) the right to develop, 2) the right to lease, 3) the right to receive bonus payments, 4) the right to receive delay rentals, and 5) the right to receive royalty payments." French v. Chevron U.S.A. Inc. , 896 S.W.2d 795, 797 (Tex. 1995).

The last-antecedent canon "provides 'that a qualifying phrase in a statute or the Constitution must be confined to the words and phrases immediately preceding it to which it may, without impairing the meaning of the sentence, be applied.' " Sullivan , 488 S.W.3d at 297 (quoting Spradlin v. Jim Walter Homes, Inc. , 34 S.W.3d 578, 580 (Tex. 2000) ).

The series-qualifier canon "provides that '[w]hen there is a straightforward, parallel construction that involves all nouns or verbs in a series, a prepositive or postpositive modifier normally applies to the entire series.' " Id. (quoting Antonin Scalia & Bryan A. Garner, Reading Law: the Interpretation of Legal Texts 147 (2012) ).

See Sharp , 252 S.W.2d at 154 ("A reservation of minerals to be effective must be by clear language. Courts do not favor reservations by implication.") (citing State v. Black Bros. , 116 Tex. 615, 297 S.W. 213, 217-18 (1927) ; Sellers v. Tex. Cent. Ry. Co. , 81 Tex. 458, 17 S.W. 32, 32 (1891) ).

The Perrymans' petitions for writ of mandamus to the court of appeals and to this Court are not in the record before us. The only argument found in the record that was made in the court below is the Perrymans' motion to transfer venue.