

# Fourth Court of Appeals

## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-18-00587-CV

Beatrice J. Janacek **JARZOMBEK**, Phillip Janacek, Ben J. Janacek,
Kathryn M. Janacek Vajdos, Lawrence J. Janacek, Margaret R. Janacek Ryan,
Sister Rebecca Janacek, and Timothy E. Janacek,
Appellants

v.

**MARATHON OIL COMPANY**,
Don Kuhnel, Patricia Kuhnel, Jason Swafford, and Charlene Swafford,
Appellees

From the 218th Judicial District Court, Karnes County, Texas
Trial Court No. 18-01-00016-CVK
Honorable Stella Saxon, Judge Presiding

Opinion by:    Patricia O. Alvarez, Justice

Sitting:       Rebeca C. Martinez, Justice
               Patricia O. Alvarez, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: April 10, 2019

AFFIRMED

In this deed construction case, Appellants argue the deed's "subject to," "for all purposes,"

and "heirs and assigns" (rather than "heirs or assigns") language reserved the possibility of reverter

to the grantors. We conclude the deed's plain language, when read in light of Texas case law, does

not support Appellants' proposed construction. We affirm the trial court's judgment.

BACKGROUND

This case involves two deeds: a partition deed in 1965 and a general warranty deed in 1976. The language of both deeds is relevant. The 1976 Deed is of primary concern, and it references the 1965 Deed.

**A.      1965 Deed**

In 1965, Ben and Olga Janacek purchased seventy acres of land from Olga's parents' estate via a partition deed (the 1965 Deed). Ben and Olga wanted to purchase the property in fee simple, but they could not afford to buy out the entire mineral estate. Thus, the 1965 Deed conveyed the executive interest, lease money, delay rentals, and bonus money to Ben and Olga, but it partitioned "the royalty interest in and to the oil, gas and other minerals in and under the land" by reserving an "undivided one-fifth interest" to Olga and each of her four siblings. The royalty reservation would end after a term of twenty years unless there was ongoing production in paying quantities. The possibility of reverter was conveyed to Ben and Olga.

**B.      1976 Deed**

In 1976, Ben and Olga conveyed the seventy acres of land and some or all of their mineral interests to Max and Bennye Swafford. The parties do not dispute the surface estate conveyance, but they disagree on what mineral interests the 1976 Deed conveyed.

The 1976 Deed has eight major paragraphs. The underlines below show the language the Janaceks emphasize. The first three paragraphs identify the grantors, the grantees, and the consideration. The fourth paragraph describes the real property that is conveyed.

The fifth paragraph states as follows:

> Such conveyance is <u>subject</u>, however, <u>to</u> all mineral conveyances, mineral reservations, oil, gas and other mineral leases, royalty conveyances, or reservations, easements, ordinances and rights-of-way of record in the office of the County Clerk of Karnes County, Texas.

The sixth paragraph consists of an introduction and three numbered subparagraphs:

> In addition to the above exceptions this conveyance is <u>subject to</u> the following:
>
> 1.  Right-of-way Easement . . . .
>
> 2.  Road Deed . . . .
>
> 3.  Four-fifths (4/5ths) royalty interest, the royalties, bonuses, rentals and all other rights described in [the 1965 Deed], reference to which instrument is here made for all purposes, together with all rights, express or implied in and to the property covered by this policy arising out of or connected with said interests and conveyance.

The seventh paragraph provides the warranty:

> TO HAVE AND TO HOLD the above described premises, <u>subject to</u> the above set forth exceptions and reservations, together with all and singular the rights and appurtenances thereto and in anywise belonging unto the said MAX E. SWAFFORD and wife, BENNYE SWAFFORD, their heirs, and assigns, forever; and we do hereby bind ourselves, our heirs, executors and administrators to WARRANT and FOREVER DEFEND, <u>subject to</u> the above set forth exceptions and reservations, all and singular the said premises unto the said MAX E. SWAFFORD and wife, BENNYE SWAFFORD, their heirs and assigns against every person whomsoever lawfully claiming or to claim the same or any part thereof.

The eighth paragraph pertains to the vendor's lien and does not affect the analysis.

## C.    Later Conveyances

In 1999, after other conveyances, the seventy acres were divided.  The present owners are Donald and Patricia Kuhnel, who own 37.8 acres, and Jason and Charlene Swafford, who own the remaining 32.2 acres.  The 1999 deeds are not in dispute.

## D.    Current Dispute

The dispute in this appeal pertains to the interpretation of the 1965 and 1976 deeds, specifically, the disposition of the possibility of reverter.  The parties agree that there was no production from the seventy acres during the twenty-year period from 1965–1985, and that the twenty-year term royalty reservation terminated.  The remaining question is who owns the 4/5ths royalty interest that Ben and Olga received under the 1965 Deed.

**E.    Procedural Posture**

Appellants, plaintiffs below, are Ben and Olga Janacek's children (the Janaceks). The Janaceks sued Marathon Oil, Donald and Patricia Kuhnel, and Jason and Charlene Swafford, collectively the Swaffords, to gain title to the 4/5ths royalty interests. Both sides moved for summary judgment as a matter of law.

In granting partial summary judgment for the Swaffords, the trial court determined "that title to the possibility of reverter of the 4/5 royalty interest that was reserved . . . in the 1965 deed . . . passed to Max Swafford and Bennye Swafford at the time of the execution of the 1976 deed." The trial court also determined that "the 4/5 royalty interest that was reserved by [Olga's four siblings] in the 1965 deed . . . terminated on the 23d day of October, 1985 and passed to and vested in Max and Bennye Swafford on that date pursuant to the 1976 deed."

In an agreed final judgment, the trial court denied all parties' requests for attorney's fees, ordered that each party bear its own costs, and the partial summary judgment became final.

The Janaceks appeal.

## STANDARD OF REVIEW

"We review the trial court's summary judgment de novo." *ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018); *accord Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). "[W]e [also] review the trial court's construction of a deed de novo."[1] *Kardell v. Acker*, 492 S.W.3d 837, 842 (Tex. App.—San Antonio 2016, no pet.); *see Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011) (reviewing contract construction de novo); *Anadarko Petrol. Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002) (lease construction).

---

[1] "[T]he construction of an unambiguous deed is a question of law for the court." *Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017) (quoting *Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991)). We review such questions of law de novo. *Hausser v. Cuellar*, 345 S.W.3d 462, 467 (Tex. App.—San Antonio 2011, pet. denied) (en banc).

**DEED CONSTRUCTION**

"Our objective in construing a [deed] is to discern and effectuate the [parties'] intent as reflected in the [deed] as a whole." *See Hysaw v. Dawkins*, 483 S.W.3d 1, 7 (Tex. 2016) (citing *Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 151 (Tex. 1980)).

In construing a deed, we read it as a whole and use a holistic and harmonizing approach to determine the parties' intentions as expressed by all the words the parties used. *See id.* at 4, 8; *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "We discern the parties' intent from the deed's language in its entirety 'without reference to matters of mere form, relative position of descriptions, technicalities, or arbitrary rules.'" *Stribling v. Millican DPC Partners, LP*, 458 S.W.3d 17, 20 (Tex. 2015) (per curiam) (quoting *Luckel*, 819 S.W.2d at 462). We do not apply "mechanical rules of construction, such as giving priority to certain types of clauses over others or requiring the use of magic words." *Hysaw*, 483 S.W.3d at 8; *accord Wenske v. Ealy*, 521 S.W.3d 791, 794 (Tex. 2017). We adopt the construction that gives meaning to all the words and phrases and that does not render any provision meaningless. *Coker*, 650 S.W.2d at 393; *see also Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011).

Unless a general warranty deed's plain language "clearly shows an intention to convey a lesser interest," *Farm & Ranch Inv'rs, Ltd. v. Titan Operating, L.L.C.*, 369 S.W.3d 679, 681 (Tex. App.—Fort Worth 2012, pet. denied), we will construe the deed "to confer upon the grantee the greatest estate that the terms of the instrument will permit," *Waters v. Ellis*, 312 S.W.2d 231, 234 (Tex. 1958); *accord Combest v. Mustang Minerals, LLC*, 502 S.W.3d 173, 180 (Tex. App.—San Antonio 2016, pet. denied). In other words, "a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed." *Cockrell v. Tex. Gulf Sulphur Co.*, 299 S.W.2d 672, 675 (Tex. 1956); *accord Combest*, 502 S.W.3d at 179. And more specifically, "[a] reservation of minerals to be effective

must be by clear language." *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 119 (Tex. 2018).

In a deed, "[t]he words 'subject to,' used in their ordinary sense, mean subordinate to, subservient to or limited by." *Wenske*, 521 S.W.3d at 796 (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. Civ. App.—Dallas 1950, writ ref'd)). In some cases, the words subject to may be used to limit the estate granted. *Id.* at 796–97. But typically, "the principal function of a subject-to clause in a deed is to protect a grantor against a claim for breach of warranty when some mineral interest is already outstanding." *Id.* at 796. The actual meaning of a subject-to clause in a particular deed is determined by "[g]iving the deed's words their plain meaning, reading it in its entirety, and harmonizing all of its parts." *See id.* at 797.

## PARTIES' ARGUMENTS

The parties disagree on whether the 1976 Deed conveyed the possibility of reverter future interest to Max and Bennye Swafford or reserved it to Ben and Olga Janacek.

### A.    Janaceks' Arguments

The Janaceks present three issues: (1) a "for all purposes" argument, (2) a "subject to" argument, and (3) an "heirs and assigns" argument. The Janaceks insist that the 1976 Deed's four uses of "subject to" and its incorporation of the 1965 Deed "for all purposes" means the 1976 Deed reserved the possibility of reverter future interest to Ben and Olga.

### B.    Swaffords' Arguments

The Swaffords assert that the 1976 Deed's four uses of "subject to" are merely notices of prior reservations or warranty. They argue that, under established principles of deed construction, the plain language of the 1976 Deed conveyed the possibility of reverter to Max and Bennye.

## DISCUSSION

The Janaceks rely on the 1976 Deed's four uses of "subject to" and its incorporation of the 1965 Deed "for all purposes" to show that Ben and Olga did not convey the future interest to Max & Bennye in the 1976 Deed. Because the 1965 Deed predated the 1976 Deed, and the 1976 Deed expressly references the 1965 Deed, we briefly review the relevant portions of the 1965 Deed.

### A.      1965 Deed

The parties agree that the 1965 Deed reserved the royalty interest, created an undivided one-fifth interest in each of the five siblings, and imposed a finite term for the royalty interest:

> If, at the expiration of twenty years from [October 23, 1965], oil, gas and other minerals, or either of them is not being produced and mined from said land or any portion thereof, . . . this exception and reservation shall in all things cease and terminate and be null and void and said excepted and reserved interest shall vest in the grantees herein, their heirs and assigns.

The 1965 Deed's plain language reserved the royalty determinable fee in the five siblings and conveyed the possibility of reverter to Ben and Olga. The record shows, and the parties agree, that there was never any production from the property during the twenty-year term, and the determinable fee terminated on October 23, 1985.

If the 1976 Deed conveyed the possibility of reverter to Max and Bennye, then under the terms of the 1965 Deed, on October 23, 1985, the possibility of reverter passed to Max and Bennye, and the trial court did not err in granting summary judgment for the Swaffords.

The Janaceks argue that the 1976 Deed did not convey the possibility of reverter future interest to Max and Bennye. We address each argument in turn.

### B.      First Use of Subject To

The first use of subject to in the 1976 Deed is in the fifth paragraph: "Such conveyance is subject, however, to all . . . royalty conveyances, or reservations . . . of record . . . ." This language advised Max and Bennye that they would not receive a fee simple; their grant was subject to the

prior royalty conveyances and reservations of record, including the royalty determinable fee and possibility of reverter created by the 1965 Deed.

This language alerted Max and Bennye to the "reservation" of record in the 1965 Deed: the four outstanding interests in the royalty determinable fee—the 4/5ths royalty interest. The language also alerted them to the "royalty conveyance" of record in the 1965 Deed: the royalty possibility of reverter conveyed to Ben and Olga.

"A general warranty deed [such as the 1976 Deed] conveys all of the grantor's interest unless there is language in the instrument that clearly shows an intention to convey a lesser interest," *see Farm & Ranch*, 369 S.W.3d at 681, and the Janaceks have cited no authorities that show how this first use of subject to language expressly excepts or reserves the future interest from the 1976 Deed's grant to Max and Bennye.

Like the deed language in *Farm & Ranch*, "[t]he 'subject to' language in the [1976 Deed] is not a clear intention to reserve or except an interest from the conveyance," *see id.* at 683, and we will not imply a reservation in favor of the grantor, *see Aery v. Hoskins, Inc.*, 493 S.W.3d 684, 700 (Tex. App.—San Antonio 2016, pet. denied) (citing *Farm & Ranch*, 369 S.W.3d at 681); *see also Perryman*, 546 S.W.3d at 119 ("We will not find 'reservations by implication.'" (quoting *Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952)).

## C.     Second Use of Subject To, Use of For All Purposes

The second use of subject to language is in the sixth paragraph. The introduction states "In addition to the above exceptions this conveyance is subject to the following," and then lists the right-of-way easement, the road deed, and the 4/5ths royalty interest from the 1965 Deed.

Like the first use of subject to, this second use does not state a clear intention to withhold the future interest from the grant. *See Farm & Ranch*, 369 S.W.3d at 683. The sixth paragraph expressly lists the 1965 Deed's 4/5th royalty interest, gives some details about it, and refers to the

1965 Deed "for all purposes." But the sixth paragraph's language identifying the 4/5th royalty interest and referencing the 1965 Deed for all purposes does not express "a clear intention to reserve or except" the future interest from the grant. *See id.*

**D.     Third, Fourth Uses of Subject To**

The third and fourth uses of subject to in the 1976 Deed are in the seventh paragraph—the warranty: "TO HAVE AND TO HOLD the above described premises, subject to the above set forth exceptions and reservations" and "to WARRANT AND FOREVER DEFEND, subject to the above set forth exceptions and reservations."

*1.      Distinguishing* Bass

Citing *Bass v. Harper*, the Janaceks argue the 1976 Deed's first three uses of subject to, and especially its third, reserved the possibility of reverter to Ben and Olga. *See Bass v. Harper*, 441 S.W.2d 825 (Tex. 1969). The deed in *Bass* used a subject-to clause to limit the grant by stating "This Grant is subject to the Mineral Reservation contained in the following Deed(s)" and it provided a list of previously recorded deeds that limited the grant. *Id.* at 826.

But *Bass* says nothing to support the Janaceks' argument that using subject to in a grant to recognize *prior* reservations in earlier deeds manifests a *present* intent to reserve the possibility of reverter to the grantors. *See id.* at 826–27. And *Bass* rejects the Janaceks' argument that a subject-to clause in the warranty limits the grant. *See id.* at 827 ("The warranty is a separate covenant from the grant. It is not a part of the conveyance. It neither strengthens, enlarges nor limits the title conveyed. It is a contract on the part of the grantor to pay damages in the event of failure of title."). *Bass* does not support the Janaceks' arguments.

*2.      No Clear Language to Reserve Future Interest*

To withhold the royalty possibility of reverter from the grant, the 1976 Deed had to reserve it "by clear language." *See Perryman*, 546 S.W.3d at 119. The 1976 Deed could have used a save-

and-except clause, or equivalent language, to reserve the future interest to the grantors.[2] *See, e.g.*, *Newsom v. Newsom*, 378 S.W.2d 842, 843 (Tex. 1964) ("SAVE AND EXCEPT, however, that the grantors herein expressly reserve . . . ."); *Saathoff v. Saathoff*, 169 S.W.2d 219, 220 (Tex. Civ. App.—San Antonio 1943, no writ) ("Save and except, however, that said grantor, H. G. Saathoff, herein expressly reserves . . . ."). This often-used language that clearly reserved an interest from a grant was used for decades before the 1976 Deed was drafted, *see, e.g.*, *Newsom*, 378 S.W.2d at 843; *Saathoff*, 169 S.W.2d at 220, but the 1976 Deed did not use it—or other equally clear language that would have the same effect.

Instead, the third and fourth uses of subject to apply to the warranty; they refer to any exceptions or reservations that were stated in the 1976 Deed's preceding paragraphs. These third and fourth uses do not, of themselves or as they are used, reserve the possibility of reverter from the grant. *See Bass*, 441 S.W.2d at 827.

And as we have already discussed, no language in the earlier paragraphs expresses a clear intent to reserve or except the future interest from the grant. *Cf. Perryman*, 546 S.W.3d at 119; *Farm & Ranch*, 369 S.W.3d at 683.

### E.     Heirs and Assigns Argument

In their third issue, the Janaceks refer to the last sentence in the 1965 Deed's final paragraph which states that if the determinable fees terminate for want of production in paying quantities, "this exception and reservation shall in all things cease and terminate and be null and void and said excepted and reserved interest shall vest in the grantees herein, their heirs and assigns."

---

[2] The Texas Supreme Court has expressly rejected any requirement to use magic language, *e.g.*, *Hysaw v. Dawkins*, 483 S.W.3d 1, 8 (Tex. 2016), and we make no contrary statement or implication here. We merely recognize that courts have understood that the words "save and except, however, that the grantors herein expressly reserve [some interest]" express a clear intent to withhold an interest from a grant. *See, e.g.*, *Newsom v. Newsom*, 378 S.W.2d 842, 843 (Tex. 1964) *Saathoff v. Saathoff*, 169 S.W.2d 219, 220 (Tex. Civ. App.—San Antonio 1943, no writ)

The Janaceks reason that because the 1965 Deed uses "heirs and assigns" rather than "heirs or assigns," the possibility of reverter had to descend to Ben and Olga's heirs before the future interest could be conveyed. But the Janaceks cite no authorities to support their contention, and they do not explain how the future interest could revert to only them, as heirs, rather than to Max and Bennye, as assigns.

Further, the Janaceks do not show how the 1965 Deed's "heirs and assigns" phrase alters the 1976 Deed to create "a clear intention to reserve or except an interest from the conveyance." *See Farm & Ranch*, 369 S.W.3d at 683.

## CONCLUSION

The 1976 Deed's plain language is unambiguous and it simply does not conform to the Janaceks' subject to, for all purposes, and heirs and assigns language arguments.

Instead, "[g]iving the [1976 Deed]'s words their plain meaning, reading it in its entirety, and harmonizing all of its parts," we conclude the 1976 Deed conveyed the royalty future interest to Max and Bennye Swafford, *see Wenske*, 521 S.W.3d at 797, and the trial court followed the law when it denied the Janaceks' motion for summary judgment and granted summary judgment for the Swaffords.

We affirm the trial court's judgment.

Patricia O. Alvarez, Justice