# Supreme Court of Texas

No. 23-0037

Occidental Permian, Ltd., Occidental Petroleum Corporation, Oxy USA Inc., Oxy USA WTP LP, and Rodeo Midland Basin, LLC,

*Petitioners*,

v.

Citation 2002 Investment LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued March 21, 2024**

JUSTICE BLAND delivered the opinion of the Court.

Justice Huddle and Justice Young did not participate in the decision.

In this appeal, we decide whether an assignment of all rights and title to mineral interests "as described in Exhibit A" (1) conveys the lease interests in their entirety as described in a listed column in the exhibit or (2) reserves to the grantor ownership of interests beyond depth

notations listed in an additional column identifying portions of tracts within the listed leases.

The exhibit neither clarifies which level of specificity dictates the grant of the property interest nor expresses that the grantor reserves portions of interests beyond identified tracts within the listed leases. The ambiguous Exhibit A in this case presents an issue like the one our Court resolved in *Piranha Partners v. Neuhoff*.[1] Considering the entire conveyance together with Exhibit A, as *Piranha* instructs, we hold that the grantor conveyed its entire ownership in the leaseholds without reserving an interest in portions outside the identified tracts within the leases. The court of appeals reached the same conclusion. Accordingly, we affirm its judgment.

## I

Shell Western E&P, Inc., sold a large acreage bundle of Texas oil-and-gas properties to the predecessor of Respondent Citation 2002 Investment LLC in 1987, incorporating an assignment of mineral interests in the Purchase and Sale Agreement. The Assignment begins with enumerated granting clauses:

> SHELL WESTERN hereby grants, sells, assigns, transfers and conveys to CITATION . . . subject to the terms and conditions contained herein, the following property:
>
> 1. All of SHELL WESTERN's right, title and interest in and to the oil and gas fee, mineral and leasehold estates described in EXHIBIT A, . . . ;
>
> . . . .

---

[1] 596 S.W.3d 740 (Tex. 2020).

2

3. All of SHELL WESTERN's right, title and interest in and to any contracts or agreements, including, but not limited to, . . . rights above or below certain footage depths or geological formations, affecting the property described in EXHIBIT A.

The Assignment further lists "terms, conditions, reservations [and] exceptions" that the "ASSIGNMENT shall be subject to," including the following term:

3. It is the intent of this ASSIGNMENT to transfer and convey to CITATION . . . all rights and interests now owned by SHELL WESTERN . . . in the leases and other rights described herein, regardless of whether same may be incorrectly described or omitted from Exhibit A . . . . This paragraph shall not apply to any purchases or acquisitions by SHELL WESTERN hereafter when SHELL WESTERN acquires an interest in the properties described herein by giving new consideration therefor.

Exhibit A describes the assigned property interests in six-column tables. It first lists nine pages of well interests, sorted by "Key Code[s]." The remainder of Exhibit A contains a table of leases described in Columns I–III. For a few of those leases—the ones in dispute in this appeal—Column IV of the table contains "Tract Description[s]" for portions of acreage found within the leased land, including depth specifications. For example, for one lease, Column IV says, "Sec 28: W1/2 SE1/4, from 8,361 feet to 8,393 feet." Column V adds information regarding any "Interest Assigned in Described Tract," listing interests by type and percentage. For example, "100% WI [(Working Interest),] 87.5% NRI [(Net Revenue Interest)] (oil)[,] 90% NRI (gas)." Finally,

3

Column VI contains descriptions of third-party interests that encumber the leases.

Citation claims that the tracts described in Column IV identify portions of the leased land subject to third-party interests listed in Column VI. Below is an example:

| Benedum Field Upton and Reagan Counties, Texas | | | | | |
|---|---|---|---|---|---|
| I. | II. | III. | IV. | V. | VI. |
| Shell Lease Number | Instrument Date and Record | Lessor-Lessee or Grantor-Grantee | Tract Description | Interest Assigned in Described Tract | Being Subject to the Following Agreements |
| T-8888-B2 KC-32642 KC-32940 | Oil and Gas Lease 09-16-29 Upton County Volume 36, Page 115 Reagan County Volume 18, Page 100 | State of Texas to Shell Petroleum Corp. | Original Permit #9153 embracing N1/2 Sec 14 Block 58, University Land, 320 acres in Reagan and Upton Counties, Texas, from surface to base of lower Spraberry formation. <br><br> Original Permit #9153 embracing N1/2 Sec 14 Block 58, University Land, 320 acres in Reagan and Upton Counties, Texas, below base of lower Spraberry formation. | 100% WI. 87.5% NRI (oil) 90% NRI (gas) <br><br> 1/8 ORRI. | Farmout Agreement and Assignment dated 03-15-84 to John L. Cox for S1/2 of E1/2 Section 12 and N1/2 Section 14, Block 58, University Lands. <br><br> Benedum-Spraberry Unit and Unit Operating Agreements dated 11-01-65 (Shell's interest is 9.89311%). <br><br> Gas Purchase Contract dated 06-11-75 by and between Union Texas Petroleum and SWEPI. |

A decade after Shell and Citation executed the 1987 Shell–Citation Assignment, Shell purported to assign all its interests in the same leases to Occidental Permian's predecessor. Exhibit A-1 of this 1997 assignment lists dozens of leases, many of which were included in the earlier 1987 Shell–Citation Assignment—this time with no depth descriptions. Occidental claims that Shell had reserved to itself interests beyond the depth specifications of Column IV of Exhibit A in the 1987

4

Shell–Citation Assignment. Below is an example from Exhibit A of a listed lease with a depth notation in Column IV:

| I. Shell Lease Number | II. Instrument Date and Record | III. Lessor-Lessee or Grantor-Grantee | IV. Tract Description | V. Interest Assigned in Described Tract | VI. Being Subject to the Following Agreements |
|---|---|---|---|---|---|
| WT-225 | Oil and Gas Lease 11-01-47 Volume 28, Page 493 | Edith M. Hall et al to Geo S. Turner | Block D, A-126, D&W Ry. Co. Survey Sec. 11: All rights below 7,800 feet in SE1/4, 6,850 feet in NE1/4, 6,900 feet in NW1/4 and 6,830 feet in SW1/4. | 1.0000000 WI. .875000 NRI. | Casinghead Gas Contract dated 09-16-75 between Shell Oil Company and Phillips Petroleum Corp. (C34). |
| | Oil and Gas Lease 11-01-47 Volume 28, Page 463 | J.D. Christy to Geo S. Turner | Block D, A-126, D&W Ry. Co. Survey Sec. 11: All rights below 7,800 feet in SE1/4, 6,850 feet in NE1/4, 6,900 feet in NW1/4 and 6,830 feet in SW1/4. | 1.0000000 WI. .875000 NRI. | |

In 2006, Citation assigned the mineral interests it had acquired via the 1987 Shell–Citation Assignment to Endeavor Energy Resources, L.P. Endeavor was once a party to this suit but has since settled.

To summarize, Occidental claims that Shell reserved "deep-rights" interests to itself when it conveyed the leases identified in the 1987 Shell–Citation Assignment, and in 1997, Shell conveyed to Occidental's predecessor the rights Shell had reserved. Citation claims that Citation received the entirety of Shell's leasehold interests in the 1987 Shell–Citation Assignment.

Litigation ensued over these conflicting property interests, with the Occidental parties opposing Citation and Endeavor.[2] Though the parties contest whether Shell reserved interests in the leasehold estates that it conveyed in the 1987 Assignment, they nonetheless agree that the 1987 Assignment is unambiguous. Accordingly, the parties jointly requested the trial court's interpretation of the 1987 Assignment through cross-motions for summary judgment.

The trial court granted Occidental's motion, concluding that the depth-specified tracts listed in Column IV of Exhibit A reserved to Shell the mineral-estate depths beyond the Column-IV notations. Citation sought permission to appeal, which the trial court granted.

The court of appeals accepted the appeal and reversed, holding that the 1987 Shell–Citation Assignment unambiguously conveyed the entirety of Shell's interests in the leasehold estates listed in Column I without reserving portions of those interests to Shell.[3] The court of appeals held that Exhibit A did not limit the mineral-estate conveyance by noting depths for portions of tracts in Column IV. Rather, the Assignment indicated that Shell had granted all rights it held in the *leases* identified in Column I.[4] The remaining columns in Exhibit A described the leases that were conveyed. We granted Occidental's petition for review.

---

[2] In 2019, Occidental Permian assigned some of its rights to Occidental Midland Basin, LLC. Occidental Midland assigned some of those rights to Rodeo Midland Basin, LLC, which is also before us on appeal.

[3] 662 S.W.3d 550, 560–61 (Tex. App.—El Paso 2022).

[4] *Id.*

6

## II

The interpretation of an unambiguous contract is a question of law we review de novo.[5] In interpreting a contract, "[w]e consider the entire agreement and, to the extent possible, resolve any conflicts by harmonizing the agreement's provisions, rather than by applying arbitrary or mechanical default rules."[6] This harmonizing approach requires courts to "give effect to all the provisions of the contract so that none will be rendered meaningless."[7] Even when the parties agree that an agreement is unambiguous, as in this case, a reviewing court should independently confirm that determination.[8]

Occidental contends that the 1987 Shell–Citation Assignment limits the conveyance of the mineral estates to the depths listed in Column IV of Exhibit A for tracts within the leased estates and that the court of appeals erred in concluding otherwise. In Occidental's view, noting depths located in portions of some leases means that the parties intended for Shell to retain ownership of the mineral estates beyond those noted depths. Occidental further argues that the extensive detail in Exhibit A distinguishes the 1987 Shell–Citation Assignment from the one our Court analyzed in *Piranha*, in which we concluded that the tract

---

[5] *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 709 (Tex. 2021); *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 650–51 (Tex. 1999).

[6] *Piranha*, 596 S.W.3d at 744 (citing *Wenske v. Ealy*, 521 S.W.3d 791, 792, 796 (Tex. 2017)).

[7] *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 333 (Tex. 2011) (quoting *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003)).

[8] *See Piranha*, 596 S.W.3d at 743–44.

7

descriptions in an attached exhibit did not reserve portions of the leasehold estate to the grantor.

Citation responds that Exhibit A conveyed the entirety of Shell's interest in the mineral estates by describing each estate in the first three columns of Exhibit A without limitation or reservation. The Assignment's broadly worded granting clauses control, it argues, because neither the granting clauses nor Exhibit A states that the depth notations reserved a portion of the described mineral estates.

## A

The assignment in *Piranha* similarly incorporated an "Exhibit A" that described details of the conveyed mineral estate. The conveyance in that case granted "[a]ll oil and gas leases, mineral fee properties or other interests, INSOFAR AND ONLY INSOFAR AS set out in Exhibit A."[9] Our Court recognized in *Piranha*, however, that "[n]othing in Exhibit A . . . expressly state[d] whether the well, the land, or the lease" listed in Exhibit A "identifie[d] the scope of the interest conveyed."[10] Ultimately, other provisions of the assignment provided context to determine that scope.[11] The assignment granted the entire lease interest, while the assignment's listed well and land interests encompassed by that lease were mere descriptors to help identify the lease.[12]

---

[9] *Id.* at 744.

[10] *Id.* at 746.

[11] *Id.* at 753–55.

[12] *Id.* at 754.

The Exhibit A at issue in this case similarly lists overlapping property interests. The disputed entries list (1) overarching leasehold mineral estates, (2) tracts within those leases (some with depth specifications) and (3) third-party interests that encumber those leases. Much like the exhibit in *Piranha*, Exhibit A lists smaller property interests encompassed by larger property interests, with no express reservation of the property beyond the smaller interests to Shell as the grantor. Exhibit A contains no language directing the proper method for reading its tables. Instead, it serially lists leases that encompass other listed interests.

**B**

Because Exhibit A in the 1987 Shell–Citation Assignment presents ambiguities, we turn to the Assignment's other terms.[13]

The Assignment grants: "*All* of SHELL WESTERN's right, title and interest in and to the oil and gas fee, mineral *and leasehold estates* described in EXHIBIT A."[14] The broad grant of "leasehold estates" points to the leases listed in Column I as the definitive identifying description of the conveyed interests, unencumbered by the depth specifications of Column IV that describe tracts found within those estates. The granting clause involving contract rights instructs that depth specifications above or below a designated footage are not determinative, stating that it conveys: "All of SHELL WESTERN's right, title and interest in and to any contracts or agreements, *including, but not limited to, . . . rights*

---

[13] *See id.* at 752–53.

[14] Throughout our analysis, we add emphasis to quoted portions of the Assignment for easier reading.

9

*above or below certain footage depths or geological formations, affecting the property described in EXHIBIT A.*"

Notably, the first granting clause applies to "leasehold estates," while the second applies to "contracts or agreements" that may be depth limited. The Assignment recognizes the grant of leases separately from the grant of contract rights and burdens. This separation solidifies a reading that Column I's list of leases is not narrowed by Columns IV through VI, which refer to contracts or agreements that contain depth limitations.

The final granting clause confirms this reading. The broadest granting clause comes toward the end of the Assignment's first page: "It is the intent of this ASSIGNMENT to transfer and convey to CITATION . . . *all rights and interests now owned by SHELL WESTERN . . . in the leases and other rights described herein, regardless of whether same may be incorrectly described or omitted from Exhibit A.*" By specifying the "leases" as "described herein," the Assignment once again indicates that the *leases* are the significant interests described in Exhibit A and that Shell intends to convey *all* rights it has "in the leases." Construing Column IV to reserve mineral rights beyond the tract descriptions within it is not consistent with this clause, which expressly states that Shell conveyed all the interests it held in the listed leases. Considering the broad granting language of the overall Assignment alongside Exhibit A, we conclude that the 1987 Shell–Citation Assignment unambiguously transferred the leasehold interests listed in Column I of Exhibit A without reservation.

Occidental suggests that we disregard the third granting clause because it permits the conveyance of property that is "incorrectly described," rendering it an overly broad Mother Hubbard clause. A Mother Hubbard clause is "a catch-all for small, overlooked interests" that "is not effective to convey a significant property interest not adequately described in the deed."[15] Occidental argues that such a clause is not intended to grant more than de minimis property interests, and thus it cannot be read to remove Shell's reservation of portions of the leasehold estates described.

In the context presented, we disagree that the final granting clause in the 1987 Shell–Citation Assignment is a Mother Hubbard clause. We interpreted similar language in *Davis v. Mueller*: "Grantor hereby conveys to Grantee all of the mineral, royalty, and overriding royalty interest owned by Grantor in Harrison County, *whether or not same is herein above correctly described*."[16] We held that this language constituted a general grant of conveyance that "could not be clearer."[17] Similarly, the 1987 Assignment plainly grants "all rights and interests now owned by SHELL WESTERN . . . in the leases and other rights described herein, regardless of whether same may be incorrectly described or omitted from Exhibit A." And it adds that "[i]t is the intent of this ASSIGNMENT to *transfer and convey*" the leasehold interests as listed. It cannot be read to reserve particular interests to the grantor,

---

[15] *Davis v. Mueller*, 528 S.W.3d 97, 100, 102 (Tex. 2017) (citing *Jones v. Colle*, 727 S.W.2d 262, 263 (Tex. 1987)).

[16] *Id.* at 99 (emphasis added).

[17] *Id.* at 102.

11

and it cannot be read as a Mother Hubbard clause covering only overlooked interests.[18]

The broad granting language is followed by an express reservation: "This paragraph shall not apply to any purchases or acquisitions by SHELL WESTERN hereafter when SHELL WESTERN acquires an interest in the properties described herein by giving new consideration therefor." After notably broad granting language, the Assignment specifies that the language does not apply to Shell's future interests in the same land—interests that Shell had yet to own. But the reservation clause does not reserve interests beyond the depth notations found in Exhibit A's Column IV.

## C

Occidental's remaining arguments in favor of a Column-IV reservation from the mineral estates are similarly unavailing. First, Occidental contends that Citation's reading of Exhibit A renders Column IV's depth-specified notations superfluous.[19] However, as we noted in *Piranha*, an exhibit's more specific property listings can be

---

[18] *See id.* ("A Mother Hubbard clause is not effective to convey a significant property interest not adequately described in the deed."). Because this clause is facially granting interests—like the granting clause in *Davis*— we need not discuss the circumstances that might render a similar provision a Mother Hubbard clause. The Mother Hubbard clause in *Davis* featured (1) an agreement to cure defects and (2) a description of contiguous pieces of land. *See id.* at 99. Occidental relies on the placement of the provision near the end of the Assignment in arguing that the provision is a Mother Hubbard clause. *Davis* again says otherwise—the general grant in that case appeared in the sentence immediately following the true Mother Hubbard clause. *See id.*

[19] *See J.M. Davidson*, 128 S.W.3d at 229 ("[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless.").

descriptive of tracts found within each conveyed estate.[20] The depth-specific interests in the 1987 Shell–Citation Assignment's Exhibit A serve a concrete purpose even absent reservation of an ownership interest. They provide notice of depth-specific third-party interests that continue after the leasehold estates are assigned.[21]

Occidental next argues that the Assignment's use of "subject to" in several places demands a limited reading of Exhibit A and its descriptive columns, curbing the conveyance to the depth specifications of Column IV.

In *Wenske v. Ealy*, we held that courts are to interpret the phrase "subject to" in context to determine its intended effect.[22] We observed "that subject-to clauses are widely used for other purposes" than their ordinary meaning of "subordinate to, subservient to or limited by."[23] For example, subject-to clauses can explain that a property is "subject to an outstanding mineral lease and that lease is to be maintained after the conveyance."[24] An agreement may be "subject to" a term that does not limit the scope of the conveyance but instead notifies the grantee of a right or obligation attendant to the property conveyed.

---

[20] 596 S.W.3d at 754–55.

[21] *See Wenske*, 521 S.W.3d at 798 (interpreting language in a deed to "put the [grantees] *on notice* that the entirety of the minerals are subject to the outstanding [nonparticipating royalty interest] to avoid a warranty claim" (emphasis added)).

[22] *See id.* at 794–95.

[23] *Id.* at 796 (quoting *Kokernot v. Caldwell*, 231 S.W.2d 528, 531 (Tex. App.—Dallas 1950, writ ref'd)).

[24] *Id.* at 796–97.

Four "subject-to" phrases appear in the 1987 Shell–Citation Assignment; none expressly reserve to Shell interests beyond the specifications found in Column IV. First, the Assignment's second paragraph specifies that the conveyance is "subject to the reservations and conditions herein" in the second line and "subject to the terms and conditions contained herein" in the fifth line:

> IN CONSIDERATION of the mutual promises made between SHELL WESTERN and CITATION, and subject to the reservations and conditions herein, SHELL WESTERN hereby grants, sells, assigns, transfers and conveys to CITATION, its successors and assigns, without warranty of any kind, express or implied, subject to the terms and conditions contained herein, the following property:

A numbered list follows, granting "[a]ll of SHELL WESTERN's right, title and interest" in different property interests "described in EXHIBIT A." The granting clauses do not reserve or except interests to Shell. Nothing in Exhibit A indicates that the columns reserve portions of leasehold interests that Shell owned. Instead, Column IV describes rights and obligations that remain on the land post-transfer.

The next paragraph of the Assignment specifies that it "shall be subject to the following terms, conditions, reservations or exceptions." This preamble is the third instance of "subject to" in the Assignment.

> THIS ASSIGNMENT shall be subject to the following terms, conditions, reservations or exceptions:
>
> 1. This ASSIGNMENT shall at all times be subject to the terms, conditions, exceptions and reservations contained in a certain unrecorded Purchase and Sale or Exchange Agreement between SHELL WESTERN and CITATION dated January 7, 1987 . . . .

14

2. SHELL WESTERN acknowledges that CITATION is financing the transaction in which it is acquiring the property conveyed hereunder with a loan from MBank Houston, N.A., and SHELL WESTERN shall have no remedy which will adversely affect the lien of MBank Houston, N.A.

3. It is the intent of this ASSIGNMENT to transfer and convey to CITATION . . . all rights and interests now owned by SHELL WESTERN, its successors and assigns, in the leases and other rights described herein, regardless of whether same may be incorrectly described or omitted from Exhibit A . . . . This paragraph shall not apply to any purchases or acquisitions by SHELL WESTERN hereafter when SHELL WESTERN acquires an interest in the properties described herein by giving new consideration therefor.[25]

The terms that follow the subject-to clause identify reserved interests and burdens on Shell's conveyance. For example, one explains that Shell "reserve[d] the right for itself . . . to purchase crude oil produced from the PROPERTY" with thirty days' notice. The only "term" that mentions Exhibit A is the broad granting clause that "transfer[s] to CITATION all rights and interests now owned by SHELL WESTERN . . . in the leases and other rights described herein, regardless of whether same may be incorrectly described or omitted from Exhibit A." As discussed above, this term invites a broad reading of Exhibit A—one in which the Column-I *leases* are the described interests to be conveyed. The limiting part of this "term" follows the broad granting language—explicitly excluding rights in the property Shell

---

[25] The list of additional "terms" includes seven entries. We include three here for illustrative purposes.

might later purchase. The remaining "terms" do not invoke Exhibit A or reserve itemized leasehold-estate interests to Shell as grantor.

The fourth and final use of "subject to" is in the first paragraph of the Assignment's listed "terms." The paragraph explains that the Assignment is "subject to" the parties' purchase agreement. Once again, this "subject to" phrase does not direct that Exhibit A limits the conveyance of the mineral estates the exhibit lists.

In sum, none of the uses of "subject to" in the Assignment reserve portions of the leasehold mineral estates that Shell expressly conveyed in Exhibit A. Instead, the Assignment is "subject to" (1) explicit reservations listed in the Assignment and (2) certain burdens that remain on the land, with notice provided by Columns IV through VI. Lastly, Occidental points to a depth-specified Column-IV entry that has no accompanying third-party agreement in Column VI:

| I. | II. | III. | IV. | V. | VI. |
|---|---|---|---|---|---|
| Shell Lease Number | Instrument Date and Record | Lessor-Lessee or Grantor-Grantee | Tract Description | Interest Assigned in Described Tract | Being Subject to the Following Agreements |
| WT-4731 KC-30533 KC-31904 KC-31321 KC-34624 | Oil and Gas Lease 06-14-60 Volume 73, Page 460 | L. B. Merchant et al to Shell Oil Company | Block A, A-250 H&O.B. RR. Survey Sec 12: NE1/4, down to 8,393 feet | .2500000 WI. .2187500 NRI. | Operating Agreement dated 02-15-85 with Frank Shackelford, Operator, and Shell et al, Non-Operators. Casinghead Gas Contract with Frank Shackelford. |
| | | | Block A, A-249 L&SV RR. Co. Survey Sec. 16: NE1/4 and SW1/4, down to 8,000 feet | .0312500 ORRI. | Farmout dated 10-01-69 between Southwestern Natural Gas, Inc. and Shell Oil Company. Gas Purchase Contract with El Paso Natural Gas effective 02-25-80, dated 12-14-79. |
| | | | **Sec 16: SW1/4, from 8,001 feet to 8,700 feet** | **1.0000000 WI. .8750000 NRI.** | |

Occidental also notes a Column-IV depth-specified entry that graphically aligns with a Gas Purchase Contract, which need not be depth specific:

| I. | II. | III. | IV. | V. | VI. |
|---|---|---|---|---|---|
| Shell Lease Number | Instrument Date and Record | Lessor-Lessee or Grantor-Grantee | Tract Description | Interest Assigned in Described Tract | Being Subject to the Following Agreements |
| WT-4366 KC-31259 | Oil and Gas Lease 06-03-60 Volume 73, Page 340 | Rupert P. Ricker to Shell Oil Company | Block A, A-271, L&SV Ry. Co. Survey Sec 23: SE1/4 and NW1/4 down to 8,393 feet | 1.0000000 WI .8750000 NRI | **Gas Purchase Contract** dated 12-14-79 with El Paso Natural Gas effective 02-25-80. |

Occidental contends that, if the depth specifications merely described interactions with third parties or gave notice of Shell's operations, then every depth-specific Column-IV entry should correspond to a third-party interest entry described in Column VI. Column VI refers to operating agreements and farmout agreements without elucidation of their provisions. In harmonizing these references, we return to the Assignment's granting clauses, which do not reserve leasehold interests beyond the depth notations to Shell. Exhibit A does not clarify the import of depth notations within the described leasehold estates, or whether they operate independently from other tract information to form a reservation of Shell's described leasehold interests. A grantor who intends to reserve specific interests while otherwise granting all of its "right, title and interest" in the described estate must do so

explicitly.[26] Occidental's two posited, potentially conflicting entries are insufficient to constitute a reservation of rights not expressed in the Assignment or Exhibit A.

\*     \*     \*

We hold that the disputed assignment unambiguously conveyed all right, title, and interest that Shell owned in the leasehold estates listed in Column I of Exhibit A, without reserving portions of those interests to itself through further notations about specific tracts within those estates. As the court of appeals reached the same conclusion, we affirm its judgment.

Jane N. Bland
Justice

**OPINION DELIVERED:** May 17, 2024

---

[26] *See Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 119 (Tex. 2018) ("We will not find 'reservations by implication.'" (quoting *Sharp v. Fowler*, 252 S.W.2d 153, 154 (Tex. 1952))). "A reservation of minerals to be effective must be by clear language." *Id.* (quoting *Sharp*, 252 S.W.2d at 154).